# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

TOO TALL, INC.,

                Plaintiff,

       v.                                      Civ. No. 08-191  JP/WDS

SARA LEE BAKERY GROUP INC.,

                Defendant.

## MEMORANDUM OPINION AND ORDER DENYING
## MOTION TO STRIKE PLAINTIFF'S JURY DEMAND

In November 2005, Plaintiff Too Tall, Inc. ("Too Tall") entered into an agreement to distribute the products of Defendant Sara Lee Bakery Group, Inc. ("Sara Lee") in an area of Albuquerque, New Mexico. Approximately two years later, Sara Lee sought to terminate the agreement. (Compl. ¶¶ 10–11.) Plaintiff filed suit in state court in Bernalillo County,[1] asserting claims for breach of contract, breach of the covenant of good faith and fair dealing, and tortious interference with prospective and existing contractual relationships. Defendant removed the case to federal court, which has jurisdiction under 28 U.S.C. § 1332.

On February 27, 2008, Plaintiff filed a Jury Demand (Doc. No. 4). Defendant filed a Motion to Strike Plaintiffs' Jury Demand (Doc. No. 9), based on a provision in the Distribution Agreement in which both parties agreed to waive trial by jury. (*See* Distribution Agreement, Defs.' Ex. A, § 11.3.) Plaintiff concedes that the Distribution Agreement expressly states that the parties waive their rights to a jury trial, but contends that it did not knowingly and voluntarily

---

[1]The complaint was originally filed by Nathan and Rena Sanchez. However, during briefing on this motion, the parties jointly moved to substitute Too Tall, Inc. for the Sanchezes. (Doc. No. 15.)

waive the right. Plaintiff submits an affidavit of Mr. Nathan Sanchez, the president of Too Tall, Inc., in opposition to Defendant's motion (Aff. of Nathan Sanchez, Pl.'s Ex. A.)

## I. Legal Standard for Contractual Waiver of Jury Trial

The Seventh Amendment protects a civil litigant's right to a jury trial in suits at common law. *See* U.S. Const. amend. VII, *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937). This right is fundamental and therefore "courts indulge every reasonable presumption against waiver." *Id.*

The question of whether Plaintiff has waived its right to a jury trial is governed by federal law.[2] *See Simler v. Conner*, 372 U.S. 221, 222 (1963). This includes disputes about the enforceability of a contractual jury waiver, though state contract law may assist in this determination. *See Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835 (10th Cir. 1988); *Med. Air Tech. Corp. v. Marwan Inv., Inc.*, 303 F.3d 11, 18 (1st Cir. 2002).

Waivers of the right to jury trial are not inherently illegal or contrary to public policy, *Telum*, 859 F.2d at 837, but must be knowingly and voluntarily made. *Marwan*, 303 F.3d at 19; *Leasing Serv. Corp. v. Crane*, 804 F.2d 828, 832 (4th Cir. 1986); *K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 756 (6th Cir. 1985) ("Those cases in which the validity of a contractual waiver of jury trial has been in issue have overwhelmingly applied the knowing and voluntary standard."); *see also Hulsey v. West*, 966 F.2d 579, 581 (10th Cir. 1992) (implicitly adopting district court's "knowing and voluntary" standard).

The Tenth Circuit has not decided which party carries the burden of proving a voluntary and knowing waiver. In *Hulsey v. West*, the Tenth Circuit identified a split among the circuits on this issue, but did not reach the question because it found that the party seeking to avoid the waiver was not personally bound by the contractual provision. 966 F.2d at 581. However, the majority of courts considering the issue have placed the burden on the party seeking to enforce the waiver, on the ground that a jury trial is a fundamental right. *See, e.g.*, *Tracinda Corp. v.*

---

[2]This is true notwithstanding the choice of law provision in the Distribution Agreement, which provides that the "validity, interpretation and performance of this Agreement shall be controlled by and construed in accordance with the laws of the state of Missouri." (Distribution Agreement § 12.8.)

*DaimlerChrysler AG*, 502 F.3d 212, 222 (3d Cir. 2007)*; Leasing Serv. Corp.*, 804 F.2d at 833; *Phoenix Leasing Inc. v. Sure Broad. Inc.*, 843 F. Supp. 1379, 1384 (D. Nev. 1994); *Bevill Co. v. Sprint/United Mgmt. Co.*, Civ. No. 01-2524, 2006 U.S. Dist. LEXIS 76295 (D. Kan. Oct. 11, 2006); *Postnet Int'l Franchise Corp. v. Amercis Int'l, Inc.*, Civ. No. 06-125, 2006 U.S. Dist. LEXIS 42794 (D. Colo. June 26, 2006). *But see K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 758 (6th Cir. 1985) (placing burden on party seeking to avoid the waiver "in the interest of liberty of contract"). *See also generally* 8-38 Moore's Federal Practice - Civil § 38.52. Consistent with the majority, the Court concludes that Defendant Sara Lee bears the burden of demonstrating that Too Tall knowingly and voluntarily waived its right to a jury trial.

In determining whether the waiver was voluntary and knowing, the court considers factors such as "(1) whether the clause containing the waiver was conspicuous; (2) whether there was a gross disparity in bargaining power between the parties; (3) the business or professional experience of the party opposing the waiver; and (4) whether the party opposing the waiver had an opportunity to negotiate contract terms." *Boyd v. U.S. Bank Nat'l Ass'n*, Civ. No. 06-2115, 2007 U.S. Dist. LEXIS 72455 (D. Kan. Sept. 26, 2007) (*citing Phoenix Leasing*, 843 F. Supp. at 1384); *see also Allyn v. W. United Life Assur. Co.*, 347 F. Supp. 2d 1246, 1252 (M.D. Fla. 2004) (considering similar factors and also whether the waiving party was represented by counsel). These factors are similar to those evaluated under Missouri law,[3] which was the focus of the parties' briefing.

---

[3]Missouri courts consider four factors in determining whether a waiver was proper: (1) the conspicuousness of the waiver; (2) the negotiability of the contract terms; (3) disparity in bargaining power of the parties; and (4) the business acumen of the party opposing the waiver. *Malan Realty Investors v. Harris*, 953 S.W.2d 624, 627 (Mo. 1997).

**II. Whether Plaintiff's Waiver was Knowing and Voluntary**

1. Conspicuousness of Waiver

      Conspicuousness of the waiver provision is central to the assessment of whether the waiver was made "knowingly." Here, the waiver provision is clearly worded, stating simply: "[t]he parties hereby expressly agree to waive trial by jury in any such legal proceeding." (Distribution Agreement § 11.3.) Second, the waiver provision is typed in all capital letters and stands out from the surrounding text. Plaintiff contends that "[t]he Agreement also has other language in all capital letters in almost every paragraph" (Sanchez Aff. ¶ 10), but this is misleading. Though the heading of each paragraph and the labels of the parties (e.g., "Distributor" and "Company") are printed in all capital letters, the waiver is only one of two full sentences typed in this font in the entire document. The waiver is on page 22 of a 26-page contract, which might decrease the likelihood that Plaintiff noticed it. However, the use of a font style intended to make the waiver prominent persuades the Court that this waiver was conspicuous, and was not "buried" in the contract. *See Nat'l Equipment Rental, Ltd. v. Hendrix*, 565 F.2d 255 (2d Cir. 1977) (concluding that a fine print waiver in the eleventh of a sixteen-paragraph contract was inconspicuous).

      Mr. Sanchez states that he does not remember seeing the waiver. (*Id.* ¶ 8.) However, under Missouri law, a party "is charged with the obligation of reading what he signs." *Savannah Place, Ltd. v. Heidelberg*, 122 S.W.3d 74 (Mo. Ct. App. 2003). Federal law also recognizes this principle. *See, e.g., Marek v. Marpan Two, Inc.*, 817 F.2d 242, 247 (3d Cir. 1987) (holding that a plaintiff who fails to read a reasonably conspicuous notice in a form passenger contract is nevertheless bound by it); *Se. Enameling Corp. v. Gen. Bronze Corp.*, 434 F.2d 330, 334 (5th Cir. 1970) (noting that Alabama law enforcing a contract despite one party's ignorance of its terms is in accord with the general prevailing law); *Hoshaw v. Cosgriff*, 247 F. 22, 26 (8th Cir. 1917) ("It is also elementary and the courts are unanimous in holding that a person . . . cannot avoid the contract on the ground of mistake, if he signs it without reading, where there are no special circumstances excusing his failure to read it. It is the duty of every contracting party to learn and know the contents of a contract before he signs and delivers it.").

      The Distribution Agreement is not a particularly long or dense contract, and Mr.

Sanchez's failure to recall the waiver provision does not excuse its enforcement. The prominence and simplicity of the waiver easily satisfy the conspicuousness requirement.

2. Relative Bargaining Power of the Parties and Negotiability of the Waiver

Two related factors in the "knowing and voluntary" analysis concern the waiving party's opportunity and ability to fairly negotiate the waiver. Mr. Sanchez states that he did not have the opportunity to negotiate the Distribution Agreement, and that he was told to sign it "as written." (Sanchez Aff. ¶¶ 3–4.) Defendant does not contend that the jury waiver was negotiable. Rather, Defendant argues that the Court should disregard Mr. Sanchez's affidavit because it contains conclusions rather than facts. Mr. Sanchez's statements are a mixture of nonspecific factual statements and legal conclusion. He does not indicate who told him that the Distribution Agreement was a take-it-or-leave-it offer, or when this alleged statement was made. It is true that the Court may grant diminished weight to affidavit statements that are conclusory. *See, e.g.*, *Moya v. Schollenbarger*, 465 F.3d 444, 457 (10th Cir. 2006) (rejecting general assertions in an affidavit on the ground that "conclusory allegations" that an employee was subjected to a hostile work environment did not support a retaliation claim); *Salehpoor v. Shahinpoor*, 358 F.3d 782, 788 (10th Cir. 2004) (holding the unsupported allegations in an affidavit are not sufficient to create a factual question and defeat summary judgment).

However, Defendant misapprehends the applicable burden of proof. As noted above, the burden is on the party seeking to enforce a waiver of the fundamental jury right to demonstrate that the right was knowingly and voluntarily waived. Particularly considering Defendant's failure to deny Plaintiff's assertion that the contract was nonnegotiable, the Court concludes that the record is unclear on this issue.

Defendant also asserts that because both Plaintiff and Defendant are "commercial business entities," there is not a sufficient disparity in the bargaining power of the parties to render the contract unenforceable. (Reply at 6.) Plaintiff and Defendant are very dissimilar commercial business entities. Too Tall, Inc. was incorporated approximately one week prior to the signing of the Distribution Agreement explicitly for the purpose of operating as a Sara Lee franchisee, and Mr. Sanchez apparently serves as the corporation's sole director and officer. (*See* Too Tall, Inc. Corporate Information from New Mexico Public Regulation Comm'n, Reply Ex.

5

D.) In contrast, Sara Lee Bakery Group is a subsidiary of Sara Lee Corporation, a publicly traded company. (*See* Corporate Disclosure Statement, Doc. No. 7.) Assigning the label "commercial business entity" to both parties obscures real differences between their experience and leverage in formulating the franchising agreement. *See generally Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1282 (9th Cir. 2006) (en banc) (discussing the inequality in bargaining power and economic resources that typify franchise agreements).

The Court concludes that Defendant has failed to create a record demonstrating that Plaintiff had sufficient bargaining power to voluntarily waive its right to a jury trial.

3. Business or Professional Experience of the Party Waiving the Right

Mr. Sanchez states that he does not have the same business savvy as Defendant, is "not knowledgeable in business contracts," and that the Distribution Agreement was the first business contract he had signed. (Sanchez Aff. ¶ 6; Pl.'s Response at 2.)

Defendant parries that Mr. Sanchez had the skill to incorporate Too Tall, Inc. and to serve as its director. In addition, on two occasions, in July 2006 and July 2007, Too Tall sold portions of its distribution rights and territory. (Reply at 1, Reply Exs. B & C.) These modifications of the Distribution Agreement followed the procedures described in the Transfer Rights section of the Distribution Agreement. Defendant contends that this illustrates Plaintiff's understanding of its rights under that agreement, and its ability to exercise them. However, there is no evidence that executing the modifications was particularly complicated, or that it required business acumen on the part of Plaintiff. The "Franchisee Notification of Partial Distribution Rights Transfer" is by all appearances a form contract. (*See* Reply Ex. C, at 4.) Moreover, modifications entered into after Plaintiff had already been operating under the Distribution Agreement are of limited value in assessing Plaintiff's business experience at the time the Distribution Agreement was signed in November 2005.

The record does not indicate Mr. Sanchez's education level, or his business experience more generally. Prior to signing the Distribution Agreement, Mr. Sanchez had worked for four years as a Sara Lee employee distributing products in the same area. (Compl. ¶ 7.) Defendant does not dispute Plaintiff's assertion that this was the first business contract that he had ever signed. Defendant points out that Mr. Sanchez had previously signed the "Franchise Offering

6

Circular" distributed by Sara Lee. (Reply at 1–2, Reply Ex. A.) The Franchise Offering Circular explains how the franchise relationship works, and Mr. Sanchez's signature merely acknowledges that he received the circular. (*See* Reply Ex. A.) That signature says little about Mr. Sanchez's sophistication in business matters.

Defendant also argues that the plainly worded jury waiver provision can be understood by someone who does not have extensive business experience, especially if that person has the capacity to incorporate and operate a business. Defendant cites the case of *Popular Leasing USA, Inc. v. Turner Constr. Co.*, Civ. No. 05-248, 2005 WL 2874741, *2 (E.D. Mo. Oct. 31, 2005). In that case, a large corporate defendant sought to avoid the waiver on the ground that it did "not regularly conduct business relating to the procurement and leasing of telecommunications equipment," which was the subject matter of the contract under dispute. *Id.* at *2. The district court rejected this argument, noting that no specialized knowledge or sophistication is necessary to understand a straightforward jury waiver provision. *Id. Popular Leasing* is distinguishable from this case, in which Plaintiff professes not merely a lack of specialized knowledge of a particular type of commercial transaction, but a lack of any meaningful business experience. In the Court's view, the apparent simplicity of the jury waiver does not assure that a contracting party will understand the waiver's import if the party lacks any meaningful experience with business contracts and the disputes that may arise from them.

In conclusion, Defendant has failed to create a record upon which the Court can determine with confidence that Plaintiff knowingly and voluntarily waived its right to a jury trial. Because of the importance of this right, the Court must indulge every presumption against waiver. *Aetna Ins. Co.*, 301 U.S. at 393. The Court would entertain a renewal of this motion accompanied by additional facts about the parties and the circumstances surrounding the signing of the Distribution Agreement.

**THEREFORE**, Defendant's Motion to Strike Plaintiffs' Jury Demand (Doc. No. 9) is **DENIED** without prejudice to any renewed motion which may be filed based upon a more complete record.

_____
SENIOR UNITED STATES DISTRICT JUDGE