UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

TOO TALL INC.,

    Plaintiff,

vs.                                                  Civ. No. 08-191  JP/WDS

SARA LEE BAKERY GROUP, INC.

    Defendant.

**MEMORANDUM OPINION AND ORDER**

In November 2005, Plaintiff Too Tall, Inc. ("TTI") entered into the Sara See Bakery Group, Inc. Distribution Agreement (the "Distribution Agreement") (Countercl. Ex. A) to distribute the products of Defendant Sara Lee Bakery Group, Inc. ("Sara Lee") in an area of Rio Rancho, New Mexico.  Approximately two years later, Sara Lee terminated the Agreement. (Compl. ¶¶ 10–11.)  On January 23, 2008, Nathan Sanchez, president of TTI ("Sanchez") and his wife, Rena A. Sanchez, brought this lawsuit against Sara Lee in New Mexico state court. *Nathan and Rena Sanchez v. Sara Lee Bakery Group, Inc. d/b/a Sara Lee*, No. CV 2008 00723, Second Judicial District Court, Bernalillo County, New Mexico. Sara Lee removed the case to federal court, which has jurisdiction under 28 U.S.C. § 1332. After removal to this Court, TTI was substituted as plaintiff, and Nathan and Rena Sanchez were dismissed as plaintiffs.  TTI asserts claims for breach of contract, breach of the covenant of good faith and fair dealing, and tortious interference with prospective and existing contractual relationships. Sara Lee asserts a counterclaim for breach of contract seeking an award of $13,145.59 for the loss from the sale of the Distribution Rights and also asks for expenses, attorney's fees, and costs as provided in the

1

Distribution Agreement.

On February 27, 2008, TTI filed a Jury Demand (Doc. No. 4). Sara Lee filed Defendant's Motion to Strike Plaintiffs' Jury Demand (Doc. No. 9) based on a provision in the Distribution Agreement in which both parties agreed to waive trial by jury. (*See* Distribution Agreement, Defs.' Ex. A, § 11.3.) TTI concedes that the Distribution Agreement expressly states that the parties waive their rights to a jury trial but contends that it did not knowingly and voluntarily waive the right. On July 17, 2008, the Court denied Sara Lee's Motion to Strike Plaintiffs' Jury Demand (Memorandum Opinion and Order, Doc. No. 28). The Court found that Sara Lee "failed to create a record upon which the Court [could] determine with confidence that [TTI] knowingly and voluntarily waived its right to a jury trial."(*Id.* at 7.) The Court indicated, however, that it would entertain a renewal of this motion accompanied by additional facts about the parties and the circumstances surrounding the signing of the Distribution Agreement. (*Id.*)

On January 8, 2009, Sara Lee filed Defendant's Renewed Motion To Strike Jury Demand (Doc. No. 50) (the "Renewed Motion"). On February 11, 2009, TTI filed its Response and Memorandum in Opposition of Defendant's Renewed Motion to Strike Jury Demand (Doc. No. 53) (the "Response to the Renewed Motion"). Sara Lee filed a Reply brief on March 4, 2009 (Doc. No. 57).

## Factual Background

Sanchez was employed as a deliveryman for Sara Lee for four years, originally receiving approximately $650 to $750 per week. (Resp. To Renewed Mot. Ex. 1, Sanchez Dep. 55:1-3.) Sanchez is a high school graduate with no formal business or legal education. (*Id*. at 9:17-13:7.) Sara Lee is a subsidiary of Sara Lee Corporation, a publicly traded company. (*See* Corp. Discl.

St. Doc. No. 7.)

In 2005 Sara Lee changed its delivery operations from an in-house system to an independent contractor arrangement. (Sanchez Dep. 41:14-42:5.) Sara Lee offered distribution rights for purchase by its employee drivers. (Reply Ex. A Doc. No. 17.) The new delivery arrangement required that the drivers incorporate a delivery company and bid on delivery routes. (Sanchez Dep. 64:25-65:3.) Sara Lee offered severance packages to drivers who did not purchase delivery routes and offered discounts to drivers who purchased delivery routes. (Reply Ex. A Doc. No. 17.) The discounts were calculated using a uniform method. (*Id*.)

To purchase the rights to a delivery route, delivery companies were expected to enter into a twenty-six-page form Distribution Agreement. (*See* Mot. to Strike Jury Demand Ex. A Doc. No. 9.) On page twenty-two of the Distribution Agreement, in capital letters, Sara Lee included a jury waiver provision applicable to disputes arising under the Distribution Agreement. (*Id*. at 25.) Sara Lee sent prospective contract drivers a letter summarizing parts of the Distribution Agreement and including a section entitled "Risk Factors." (Reply Ex. A Doc. No. 17.) On September 27, 2005 Sanchez signed the letter, acknowledging that he received it before signing the Distribution Agreement. (*Id*.) The jury waiver provision was not discussed in the "Risk Factors." (*Id.*) Sara Lee held group meetings in which its representatives gave lectures about the new distribution arrangement and answered employee questions. (Sanchez Dep. 64:19-65:3.)

Sanchez is the sole owner and operator of TTI (Sanchez Dep. 42:15-43:8.) Sanchez filed the paperwork for TTI with the Secretary of State's Office. (*Id.* at 41:12-14.) He had no prior business experience. (*Id.* at 9:17-13:7; 66:8-9.) Sanchez formed TTI as part of the process of purchasing a delivery route from Sara Lee. (*Id.* at 41:25-43:11.) Sanchez had more than four weeks to review the contract. (Reply Ex. A Doc. No. 17.) During that time, his father and father-

in-law helped him review the contract. (Sanchez Dep. 82:20-83:9.)  Sanchez did not have a lawyer or an accountant review the agreement (*Id.*), and he did not ask Sara Lee questions about the jury waiver provision. (*Id.* at 70:20-71:5.)  Sanchez had the option of resigning from Sara Lee with a severance package. (Renewed Mot. Ex. A. 66:10-13.)  In November of 2005, on behalf of TTI, Sanchez purchased a delivery route by signing the form Distribution Agreement. (*See* Mot. to Strike Jury Demand Ex. A.) As a former employee, Sanchez received a $9,000 discount on the route. (Renewed Mot. to Strike Jury Demand Ex. A. 78:18-79:3.)  The route Sanchez purchased was worth $98,524.00 (*Id*. at 78:3.)  Sanchez testified that he was "excited" about the "good opportunity" to make "good money." (*Id*. at 69:19-22, 70:18-19.)

## Discussion

As stated in the Memorandum Opinion and Order (Doc. No. 28), notwithstanding the Missouri choice of law provision in the Distribution Agreement, federal law governs the validity of jury trial waivers, and Sara Lee bears the burden of demonstrating that Sanchez on behalf of TTI knowingly and voluntarily waived TTI's right to a jury trial. (Mem. Op. Doc. No. 28 at 2-3.) (". . . the burden is on the party seeking to enforce a waiver of the fundamental jury right to demonstrate that the right was knowingly and voluntarily waived.").  Because the right of jury trial is fundamental, courts indulge every reasonable presumption against waiver. *Pinstripe, Inc. v. Manpower, Inc.*, 2009 WL 1457704, at *2 (N.D. Okla. May 22, 2009).

In determining whether the waiver was voluntary and knowing, courts consider factors such as "(1) whether the clause containing the waiver was conspicuous; (2) whether there was a gross disparity in bargaining power between the parties; (3) the business or professional experience of the party opposing the waiver; and (4) whether the party opposing the waiver had an opportunity to negotiate contract terms." *Boyd v. U.S. Bank Nat'l Ass'n*, Civ. No. 06-2115,

2007 WL 2822518, at *18 (D. Kan. Sept. 26, 2007) (unreported) (citation omitted).

    1. <u>Whether the clause containing the waiver was conspicuous.</u>

As stated in the previous Memorandum Opinion and Order, the prominence and simplicity of the waiver in the Distribution Agreement easily satisfy the conspicuousness requirement. (Mem. Op. Doc. at 5.)

    2. <u>Whether there was a gross disparity in bargaining power between the parties.</u>

Clearly, Sara Lee had more bargaining power than Sanchez.[1]  Nevertheless, because "a disparity in bargaining power exists in most transactions between a commercial party and an individual . . . the relevant inquiry is whether this disparity was 'gross' as suggested by the Tenth Circuit." *Boyd*, 2007 WL 2822518 at *64.  In *Phoenix Leasing,* the court noted that "unequal bargaining position, by itself, should not invalidate an otherwise valid contractual waiver of the right to jury trial." *Phoenix Leasing Inc. v. Sure Broad, Inc.*, 843 F. Supp. 1379, 1385 (D. Nev. 1994) (citing *Bonfield v. AAMCO Transmissions, Inc.*, 717 F. Supp. 589, 596 (N.D. Ill. 1989)). Sara Lee must show there was not a gross disparity in bargaining power between itself and Sanchez.

Sara Lee claims that Sanchez's relationship with Sara Lee and his experience as a driver are sufficient to show that there was not a gross disparity between Sara Lee's and Sanchez's bargaining power. In addition, Sara Lee claims that Sanchez was not under any form of duress and was not compelled to sign the Distribution Agreement as offered.  TTI argues that Sanchez had grossly disparate bargaining power because he could not negotiate any terms of the Distribution Agreement and Sanchez was merely an unsophisticated employee who was faced

---

[1] Although TTI is the Plaintiff, in examining the last three factors it is necessary to look at them from Sanchez's personal point of view.

with a choice between termination of his employment or signing the Distribution Agreement.

Sara Lee claims that Sanchez had enough bargaining power to win his first choice route in the bidding process, but Sara Lee does not show specifically how bidding relates to bargaining power beyond stating that the bidding process was crucial to forming the Distribution Agreement. Sara Lee quotes a portion of Sanchez's deposition, in which Sanchez's testimony reveals that he did not seem to know specifically why he was ranked second in the bidding process. However, it is not apparent from the record that Sanchez would have used the ranking to negotiate favorable terms in the Distribution Agreement. The Court, therefore, cannot assume that the ranking gave Sanchez extra bargaining power when contracting with Sara Lee. Sara Lee also points to the $9,000 discount that TTI received on the route it purchased as further evidence of TTI's bargaining power. However, the record shows that TTI's discount was based on a predetermined uniform method and was offered to all drivers. (*See* Reply Ex. A.) The discount is not evidence of TTI's bargaining power because Sanchez did not bargain for it.

Finally, Sara Lee correctly asserts that Sanchez was not under any form of duress that lessened his bargaining power. TTI, however, claims that it suffered from financial duress because Sanchez was given the choice to sign the Distribution Agreement or seek other employment as a result of Sara Lee's decision to use delivery contractors. Sanchez did not have the option to continue as an employee of Sara Lee. Although Sanchez implies that he was completely dependent on income from Sara Lee, Sanchez does not address the possibility of other employment as a viable alternative to signing the Distribution Agreement.

In *Boyd*, the court found that the disparity in bargaining power was not gross because the party opposing the waiver had a business degree, specialized experience in finance, and had approached a bank, seeking financing. *Boyd*, 2007 WL 2822518 at *63-65. In *Phoenix Leasing,*

the court found that the disparity in bargaining power was not gross because party opposing the waiver was "experienced, professional and sophisticated in business dealings," was represented by counsel, and had bargained on other terms of the contract. *Phoenix*, 843 F. Supp. at 1384-85. Here, Sanchez was not a sophisticated businessman, he had no business education or significant business experience, did not bargain before entering into the contract, and was not represented by counsel. After a review of the evidence, the Court finds that Defendant has failed to negate the gross disparity in bargaining power between itself and Sanchez.

3. The business or professional experience of the party opposing the waiver.

Sara Lee contends that Sanchez had sufficient business experience to have knowingly and voluntarily waived his jury trial rights because as an employee Sanchez drove four different delivery routes over a period of four years, experience in which he gained knowledge of business risks and growth opportunities. Sara Lee asserts that Sanchez's business acumen expanded in the seven weeks before he signed the Distribution Agreement because Sanchez conferred with relatives and co-workers and attended three meetings with Sara Lee representatives about the distributor process during which questions were answered. Sara Lee points out that Sanchez had sufficient time to read the Distribution Agreement before signing it and that Sanchez testified that he read and understood the Distribution Agreement.

TTI argues that Sanchez's business experience is insufficient to meet the standard for waiver because Sanchez has no formal business education, and before signing the Distribution Agreement Sanchez had never entered into a business contract. It is undisputed that TTI was formed by Sanchez with Sara Lee's guidance and for the sole purpose of entering into the Distribution Agreement with Sara Lee. Sanchez testified in his deposition that he is a high school graduate and has only held salesman and delivery jobs in the past. TTI asserts that neither

7

Sanchez's work at Sara Lee nor his conversations with others regarding the Distribution Agreement afforded him any sophisticated knowledge of business contracts. According to TTI, Sanchez's lack of education and experience shows it is unlikely that Sanchez was equipped to knowingly and voluntarily waive TTI's right to jury trial.

Sara Lee relies on *Leasing Serv. Corp. v. Crane*, 804 F.2d 828 (4th Cir. 1986) to argue that Plaintiff's employment experience as a deliveryman makes up for his lack of education. The *Leasing Serv*. court, however, found that the Crane brothers had knowingly and voluntarily waived their right to jury trial because "[d]espite their lack of formal education, the Crane brothers were manifestly shrewd businessmen who had been in a generally successful drilling business for sixteen years." *Leasing Serv.*, 804 F.2d at 833. Sara Lee also relies on *Cottman Transmission Sys. v. McEneany*, Civ. No. 05-6768, 2007 WL 119956 (E.D. Pa. Jan. 17, 2007) (unpublished opinion) to assert that business experience can be demonstrated by incorporating a business. In *Cottman,* the defendant "was a builder/general contractor and owner of a [construction] company" that was established–with the aid of an attorney–before entering into the disputed contract. *Id.* at *1. The court found that the defendant "possessed the business sophistication" necessary to understand the waiver. *Id*. at *3. These cases are unconvincing because they involved parties with much more experience in the area in which they were contracting compared with Sanchez who had no experience with distribution contracts.

Sara Lee also relies on *Postnet Int'l Franchise Corp. v. Amercis Int'l, Inc.*, Civ. No. 06-125,  2006 WL 1775599 (D. Colo. June 26, 2006) (unpublished opinion) and *Orix Credit Alliance, Inc. v. Better Built Corp.*, Civ. No. 89-7333, 1990 WL 96992 (S.D.N.Y. July 2, 1990) to argue that Sanchez's consultations with relatives, co-workers, and Sara Lee representatives added to his business expertise. In *Postnet*, the party opposing the waiver "was an *ongoing*

*business at the time it entered into the Franchise Agreement*, and its principals were sufficiently sophisticated to understand the meaning of the Franchise Agreement, including the jury waiver clause." *Postnet*, 2006 U.S. Dist. LEXIS 42794, at *6-7 (emphasis added). In *Orix*, although the party opposing the waiver was not represented by counsel, the court upheld the jury waiver in part because "both sides included corporations," and neither corporation was "a stranger to contract negotiations." *Orix,* 1990 WL 96992, at *2. Unlike the parties opposing the jury waivers in *Postnet* and *Orix*, Sanchez was new to contract negotiations. Even though a lawyer's presence during contract negotiations is not required to prove that a jury trial waiver was knowingly and voluntarily given, Sanchez's relatives and co-workers, and Sara Lee's representatives are no substitute for sophisticated business experience or legal advice.  Sara Lee has not shown how the persons whom Sanchez consulted imparted to him adequate business or legal knowledge. In sum, Sara Lee has not demonstrated that Sanchez acquired the level of business knowledge necessary to waive TTI's right to jury trial knowingly and voluntarily.

      4.  <u>Whether the party opposing the waiver had an opportunity to negotiate contract terms.</u>

TTI presented Sanchez's affidavit in its Response to the original Motion to Strike Jury Demand (Resp. Ex. 1, Doc. No. 14), which states that he had no opportunity to negotiate the terms of the Distribution Agreement and that he was told to sign the Distribution Agreement "as it was written or do not sign." (*Id.* ¶¶ 3-4.) In its Renewed Motion, Sara Lee argues that Sanchez's affidavit lacks factual support, and Sara Lee proffers the affidavit of its Director of Distributor Relations, Kathy Stokes.  Ms. Stokes testified that Sanchez had the opportunity to negotiate the terms of the Distribution Agreement. (Mem. in Support of Mot. For Summary Judgment, Doc. No. 49, Ex. I, ¶ 4.)  In addition, Sara Lee points to specific language in the offer letter stating: "TAKE YOUR TIME TO DECIDE. YOU MAY FIND IT USEFUL TO REVIEW

THIS FRANCHISE OFFERING, THE DISTRIBUTION AGREEMENT, AND EXHIBITS WITH YOUR OWN ACCOUNTING, FINANCIAL AND LEGAL ADVISORS" (Def.'s Reply Ex. A. Apr. 14, 2008) as evidence that the waiver was negotiable.

In addition to Sanchez's affidavit, Plaintiff asserts that because Sanchez had no other income and was forced to compete with other drivers to keep his route he could not "rock the boat" by "negotiating" during the group meetings where other drivers were present. In his deposition, Sanchez testified that in the meetings Sara Lee representatives described the new distribution process and that "there were questions thrown out here and there." (Def. Mem. Ex A. 81:17-18). Nothing in the record indicates that drivers were negotiating during these meetings. Moreover, it would not be feasible to negotiate in such an open forum since the drivers were competing with one another for delivery routes. Ms. Stokes' stated that "Plaintiff had the opportunity to negotiate the Agreement's terms before entering into it." (Stokes Aff. ¶ 4.) If Ms. Stokes was referring to the opportunity to negotiate during those meetings, the opportunity was not meaningful. Finally, the language in the offer letter which warned Sanchez of financial and legal risks and which advised Sanchez to consult with an accountant and a lawyer before entering into the contract is unlikely to convey to Sanchez that the terms of the Distribution Agreement were negotiable. The unequal bargaining power of Sanchez and Sara Lee coupled with the group meeting format, leads the Court to conclude that Sara Lee has not shown that Sanchez had a meaningful opportunity to negotiate the terms of the Distribution Agreement.

Although the conspicuousness factor weighs in favor of enforcing the jury waiver, Sara Lee has not met its burden of proof on the other three factors to overcome the strong presumption in favor of a jury trial. Accordingly, Defendant's Renewed Motion to Strike

Plaintiffs' Jury Demand is denied.

                                          */s/ James A. Parker*
                                   UNITED STATES SENIOR DISTRICT JUDGE